You may be seated. The clerk will call the next case. 315-0541, Ronna Martin, appellant, by John Morrisey, v. LaVallie & Associates Inc. Appellee by Pamela Davis-Gorkowski. Mr. Morrisey, you may proceed. Thank you, Ronna. May it please the Court, my name is again John Morrisey from Sippert, B.C. on behalf of plaintiff appellant Ronna Martin. I'll refer to the plaintiff appellant as Martin, or plaintiff and defendant appellee as LaVallie. As the Court knows, this matter arises from a punitive class action complaint filed under the Illinois Security Deposit Interest Act. Plaintiff Ronna Martin rented property from the defendant LaVallie for four years and paid a security deposit at the beginning of each 12-month lease that she signed in those four years and was never paid security deposit interest at the end of each 12-month period. A class action complaint was filed. Shortly thereafter, the defendant filed their appearance and issued a tender of relief, ultimately an amended tender of relief, and filed a motion to dismiss, arguing that that moved the case under the appellate court decision in Ballard v. Coles Pharmacy. As the Court is well aware, that appellate court decision has since been overturned by the Illinois Supreme Court in Ballard v. Coles Pharmacy. The Court found that how the appellate court had interpreted Barber v. American Airlines  in a motion for class certification, that a mere quote, unquote, shell motion, was insufficient to bring the interest of the class before the court that was an improper interpretation of Barber. Barber's primary point of emphasis is the timing of the motion. As long as it's filed beforehand and arguably contains some minimum amount of facts, the Court will find that motion sufficient to bring the interest of the class before the court and that complaint will not be dismissed, at least on the basis of mootness. I won't spend too much time talking about Ballard unless the Court has questions regarding it. I think the defendant, in large part, concedes that ruling and argues in the alternative several grounds to affirm the appeal. How many grounds? Seven total, Your Honor. There are a number of grounds, as Justice, you just pointed out. So if there are any in particular you would like to hear about, please stop me and I will answer your questions as it relates to those. The first I want to address very briefly is that the plaintiff, Ms. Martin, has waived the right to respond to those alternative grounds. We think it's clear under Illinois Supreme Court Rule 341J that we have a right in the reply brief to respond to the arguments raised in the applicant's brief. Otherwise, you have a situation where an appellant has to anticipate every argument that the appellee is going to raise in the brief. And as the Court is well aware, the sole grounds for dismissal in the trial court, in the circuit court, was the Ballard issue. With respect to a number of grounds that the appellee has raised, the first, that LaValle as a property manager and lessor in the contract between Martin and LaValle is not subject to the Act. Obviously, the Act expressly states and applies to a lesser of residential real property. LaValle argues that it is not, in this particular instance, it's not the owner of the relevant properties at issue. A different company, LaValle, is. And therefore, it can't be held liable under the Act. Appellee cites one case in particular, the Monroe v. Brewer realty case. But as we pointed out in our brief, the Kutcher case points out that the language in that case stating that someone who does not own property cannot lease it, is mere dicta, and that neither the purpose nor the legislative history of the statute supports that particular reading. The most fact-specific argument that the appellee raises is with respect to the portion of the Act that provides that only those lessors of residential real property containing 25 or more units in a complex of buildings located on, quote-unquote, contiguous parcels of real property, is subject to the Act. And as I'm sure the Court is aware from the record, there are competing maps regarding what particular units in this park view of states are involved, which are managed by LaValle, which are owned by Louge, and which are, under the statute and under the case law, contiguous with one another. So I think the primary point with respect to that argument is that there are a number of factual disputes at issue. You have competing maps. You have drawings on those maps as to who owns what and what property is where. I think most specifically, or importantly, the appellee, LaValle, has only attached a map that shows a partial portion of the apartment complex at issue, this park view of states. In the record and in conjunction with LaValle's amended motion to dismiss, there is only a portion of that apartment complex shown, in particular the western portion just west of a cul-de-sac, Bogdan Lane. The plaintiff, Ms. Martin, in response submitted a more fulsome map that showed the entire apartment complex and showed that there are several units far in excess of the 25 or more required under the Act that are continuous with one another under the case law. And that case law that we discussed in particular is the Rutland case and the Belmont case. Those cases go different ways. The Rutland case finds that two parcels of land separated by a particular road are contiguous on the facts of that case. In the Belmont case, it's found the opposite, that it's non-contiguous. The important point from those cases, however, is that this is a very fact-specific inquiry. The size of the road matters. Where the parcels of land are located near or on the road matters. In Rutland, for example, you had a 275-foot wide tollway running through parcels of land, and yet in the context of that case, the land separated by the tollway was still found to be contiguous with one another. Here, if you take a look at the map submitted, both of the maps submitted by LaValle and Martin, you have a small, a minimal cul-de-sac with a number of units on and around that cul-de-sac. And given the number of factual disputes, given the competing maps, and given the fact that the case law shows that this is particularly a fact-based issue, it's not one the court can decide here. And it's not one the APLE was successful on under Rule 2619, which requires that they show, as a matter of law, that we cannot succeed under the statute. Thank you. Just as an aside, why is that requirement even there? That's a fair question, Your Honor. I can imagine a situation where an owner of an apartment complex owned a number of units but spread out potentially statewide or over different districts with different laws and had different operating groups involved. Well, I mean, it could be drafted to be within the jurisdiction of the state or state boundaries. But we're dealing with, presumably, by this requirement, a landlord that is in the business of rental property handling presumably a fair number of tenants with a sizable amount of security deposit money. It seems to me to be something that I'm just trying to figure out why they wouldn't do a number, just a period of the number. I think that's a fair point. But it's obviously in the statute. It's a requirement. It is. It is. Absolutely. An additional alternative ground that's been raised here is obviously the amendment to the statute that took effect in the beginning of this year, January of 2016, which changed the nature of LaValle's payment requirements under the statute. That amendment in particular, the former act, required that any interest accrued at the end of a 12-month lease period be paid at the end of that period within 30 days thereof. The amendment requires only that if at the end of a 12-month period the interest is accrued above and beyond $5, it be paid then. If not, then it be paid at the end of the tenancy no matter how much money is at stake. Of course, all of this is subject to the requirement that plaintiff not be in default on the lease. As I think we've made clear in our briefs, changing the frequency of payment and interposing requirements as to the amount that the interest needs to rise to the level of in order to make those payments on a more frequent basis affects plaintiff's substantive rights. Under the law, while settled in Illinois, a substantive change to an amendment unless expressed or otherwise stated cannot apply retroactively. So in this case, obviously we are dealing with a statute that does not speak at all to the time frame in which it's supposed to apply, does not talk about retroactive application, and given the absence of any statement to that effect and the clear preference in the case law to apply amendments prospectively, particularly in the situation we have here where the plaintiff at issue had a vested right or claim against the valley for lack of payment under the Act, courts are extremely hesitant to apply that statute retroactively. Thank you. Touching just a little bit more on the mootness discussion we had. What about the alleged breaches? I think that was also a defense by Appley that has been presented. That's correct, Your Honor. Appley has asserted three particular breaches by Ms. Martin during the final of the four leases that she entered into. So she entered into four 12-month leases, the first beginning in March of 2011 and the last beginning in March of 2014. La Valle identifies three particular breaches by plaintiff in that final 2014 lease. Those include potentially another person living in her unit with her who was not on the lease for some period of time, a failure to pay last month's rent, and one other relatively minor default. Irrespective of whether or not those issues that La Valle has raised are in fact violations of the lease agreement and whether they are not, the statute expressly provided in advance during the relevant time period when plaintiff was involved in the leasehold that payment of the interest had to occur no matter the amount, this is pre-amendment, no matter the amount within 30 days of the 12-month leasehold. And so at the very least, plaintiff still has a claim irrespective of the defaults in the last year for the first three leases that she signed. And so at the end, I will just briefly touch upon an alternative ground with respect to Ballard and Mootness that La Valle raised, which is in particular that there is a diligence requirement with pursuing class certification under Barber v. American Airlines, the Illinois Supreme Court opinion from 2011. The short of it, and this is clear in the brief, Barber doesn't have such a requirement, but it really doesn't matter here. Looking at the facts of the case, this was a fast case before it came up on appeal. It was filed in November of 2014. Defendant did not appear until nearly the new year, December 29, 2014, and issued its tender of relief in late February before filing its first motion to dismiss a week later. Thereafter, the parties were engaged in briefing until the case effectively ended with the July dismissal. Even if there is such a requirement, there isn't. Barber doesn't mention one. The only reference to it is in conjunction with rejecting a federal case that talks about such a requirement. Plaintiffs certainly satisfied it here, filing the class certification motion with his complaint and thereafter dealing with getting the defendant at issue and responding to the multiple motions to dismiss that were filed. And if the panel does not have any further questions, I will conclude. That's the time. Thank you, Mr. Marucci. Thank you very much. Ms. Gokoski? Thank you. May it please the Court, Counsel? I decided to get organized today and put everything in a notebook and then I thought to go into my car and I don't have my notes. This was, we brought an amended 2-619 motion raising certain facts and the plaintiff didn't controvert those facts. The plaintiff argued just now that there are factual disputes, but there aren't any. They did nothing to dispute the facts that we raised. One of the facts at issue, they're right that we only file part of the map. And what our affidavit says, and again, we're the management company and Loge owns the units in this state, in this subdivision. And what our affidavit shows and what our map shows, and if you look at their map it kind of makes it a little clearer, but Bogdan Lane is curved like this and this is north and this is west. And our map just shows the west side. Plaintiffs lived in a unit on the west side. And our affidavit and our map show, and this is uncontroverted, and this is addressing the contiguity requirement, that on the west side of Bogdan Lane there were six two-unit buildings owned by Loge and managed by Lavallee. There's one to the south, and this is on page 38 of our appendix. There's one on the south end, a two-unit building, and the northerly one is managed by us and owned by a different owner. But then the southerly one has a private owner. And then on the north side of that strip there's a two-unit building that is owned and it's all privately owned. So there are, in that strip, 12 units that are managed by Lavallee plus owned by Loge and then one more that we manage. So at most we have 13 there. And so those private owners on the end of each corner stocks the contiguity along Bogdan Lane. Plaintiffs' map, which is on A83 of our appendix, according to their affidavit, this is a real estate search engine that aggregates public records of ownership. And on Bogdan Lane, on the west end, you can see all those units and you can also see that on each corner. And the dots show what Loge owns. So you can also see on each corner there are units that Loge don't own. So it's given that on the west end of Bogdan, on that strip where the plaintiff resides, there are only, according to us, 13 units. They have more dots there, but if you add their dots up, it's still only 16 or so. In their brief, they raise for the first time that, well, let's take a look at what's behind these units, like what if we own 40 more back there. And they raise it for the first time. They didn't raise it in the trial court. But if you look at our map on A38, it shows that the back end behind her unit is not subdivided. And again, on their map, behind at Bogdan Lane, there's nothing shown on their map. So they don't show that there's any units there. Apparently it's not subdivided. This is something they raise for the first time in appeal. So giving these facts, the real question for the court is, what about all those units across the street from Bogdan Lane? And so across Bogdan, if you add all those up, there would be 25 contiguous. That's assuming you can jump a city, jump a public street, and still call it contiguous. And so that's the real question for the court. I don't believe there's any factual disputes. And they didn't do anything to contradict our facts. They didn't try to strike her affidavit. They didn't try to put on additional facts. So our facts are incontrovertible. Again, the statute requires 25 units on contiguous lots. This is a penal statute. It's a derogation of the common law, and so it's supposed to be narrowly construed. It is punitive. According to the plaintiff, we own 89 units in the subdivision, and their class action is seeking to recover for former tenants and current tenants for interests allegedly not returned.  plus attorney's fees. And so because it's a punitive statute, this isn't derogation of common law, this isn't something that happened in common law, it should be strictly and narrowly construed. Your Honor, I don't know the purpose for the contiguity. We looked at the debates and the legislative history, and we couldn't see it. But its effect is to limit its impact on large management companies or owners. And again, just to point out the punitiveness of it, if you look at the interest rates that are applicable in the Illinois Department of Financial and Professional Regulation, they vary from between .195 and .0005 for the years in question. And so according to my calculations, for the first year, March 2011 to February 2012, the plaintiff was owed $1.68. Then after that, at the end of 2012, the interest rate dropped to .005. The plaintiff was entitled to 4 cents that year, 4 cents the next year, and then the following year it went up to .05, but she was entitled to 40 cents. And so the total amount over the period she is owed is $2.16. And the statute makes it clear she's entitled to it either by cash or by credit for rent due. So in our case, rent's due, the water bill is owing, so she would be entitled to a credit for the $2.16. So we know that we have to have contiguous. We know it has to be narrowly construed. And so what's the general meaning of contiguous? We heard the court didn't rule on any of those issues, only on the issue regarding ballot. So did they make findings? I don't know if we're in a position, if the court didn't make those findings for us to make those findings, if that's not what they relied on. The court did not reach those issues. It was briefed by the parties, and the court can affirm for any basis that's in the record, and this was fully briefed by the parties. Now you said a credit. Actually, it's only a credit on that fourth year, whatever that amount would be, would be applied to the outstanding. Prior to three years, apparently, you can't go and take the credit prospectively because the lease ended. If I'm understanding you, you're saying that she would be entitled to a credit for the last year, but she would be entitled to a cash payment under the former version of the statute. Right. Exactly. Each one of those three terms. Correct. Under the former version of the statute. Correct. It's not retroactive. Right. Yes. Under the current version, it would be the statute says that you pay it at the end of the lease term if it's less than $5. Right. Yes. But the lease terms were still annual leases. Correct. So. Under the former version, we would have been required to give her the 4 cents in the 40th. Right. Right. Okay. Except for other arguments that she's in breach. Yes. We have other arguments. Yes. Okay. So Belmont talks about that contiguous means being in actual contact, touching, or joining. That's the Webster's definition. And Justice Stauder agreed with that in the Henry County Board case. So the usual meaning of contiguous is it has to be touching. And if it doesn't physically touch, it's not contiguous. Therefore, the lots across Fogden Lane would not be contiguous to the plaintiff's unit. We don't aggregate up to 25 units on contiguous parcels. We know that in annexation cases, there's a different rule. And there's several reasons for that. But in annexation cases, the requirements are to be liberally construed. And there's a series of cases that embodies the Hoffman Estates doctrine, which says in those cases, in annexation cases, and, for example, in Hoffman Estates, Hoffman Estates wanted to annex a parcel that was on the other side of the tollway. And so that was a barrier to contiguity. And the court said, for several reasons, we're not going to stymie expansion of municipalities because there's a barrier or a tollway or a highway that can't be annexed. And so in annexation cases, if there's a tollway or a river between the area that's to be annexed and the municipality, you can still annex. And that's called the Hoffman Estates doctrine. The Henderson v. City of Bloomington is a Supreme Court case that has a similar conclusion because of Route 66 going through there. And there's a Flossmore case that makes a similar conclusion. There are no contiguity cases in this type of matter? There are no cases defining contiguity at all under the statute? Under the statute. So we're relying on the more narrow interpretation of contiguity in the fire protection district cases, Belmont and then the other one that we cited. And so Belmont is a fire protection district case, and it says that Hoffman Estates doctrine may see no reason to expand it beyond annexation and apply it to a fire protection district case. And what we're looking for is to have it determined as narrowly construed as possible, given how keen on the statute is. And the Hoffman Estates doctrine, there would be no reason for the Hoffman Estates doctrine. And in annexation cases, if contiguity meant you can jump a street that you can't annex, if that was the basic definition of contiguity, there would be no reason for the Hoffman Estates doctrine. And so that points to, that's a liberal interpretation of the word, but that what the legislature would intend and what needs to be applied here is the general, usual meaning of the word, and that would not include jumping a street. And Hoffman Estates is the exception to the rule. It approves the rule. And there's reasons why the annexation statutes can be more liberally construed. And one, like I said, the courts don't want to interrupt municipal expansion. Secondly, the Flossmoor case points out, and it's the last sentence of Flossmoor where they say, well, because part of Kedzie Avenue is a barrier separating the two areas, the last sentence of the case says, but a municipality can annex the street. So that means that it's not going to be not contiguous anymore because they have the power to annex the street. And the statute anticipates that, that the annexation would extend to the end of the furthest street. So in this situation, again, there's no cases under this Act, but we're relying on the traditional notion of contiguity to say it doesn't apply in this case. Counsel has two minutes. So it must be physically touching, so to speak, right? Or at least on the same parcel. Parcels have to be physically touching. Or the other way they call it is adjoining in a substantial physical way. And so, again, in the annexation cases, because of specific exceptions, it's okay to jump a street, but that would not be the traditional meaning of kind of continuous. It would be touching or physically touching. Does it have to be in a public way? The Hoffman State's doctrine? Yes. The Hoffman State's doctrine would also apply if there was like a barrier of like a water, like a river or something like that. So a creative landowner or owner could create those. Well, I think it would be easier just to get the four sons every year. But, well, I think that this could be manipulated. I think that a landlord, I guess, could be careful to make sure there's a public street across, you know, in the middle of the subdivisions. But also, you know, if you think about like this subdivision is like an urban area. It's not like a big complex of buildings or something like that. And, again, as you discussed, it's interspersed with people who almost doesn't own them. I guess my question is that, you know, this is sort of where I've been struggling with. If contiguous is just contiguous, and it means actual touching, why do they include or adjoining in a substantial, substantially physical way or manner or something? What would that be? How is that different than contiguous? Well, it means adjoining or touching in a substantial physical way. So some of the cases say things like the annexation cases will say they have limitations on that. So sometimes if there's even physical touching, it's not contiguous for purposes of annexation. So they call it cornering. So like if we have a parcel like here and here, even though they're touching, that's not substantial physical touching. And that is not sufficient for annexation. I believe another one of their exceptions is they say that if you have just a strip connecting two things, like here and here, and you just have one little narrow strip that goes on for 20 miles, even though they physically touch, that's not in a substantial physical way. So that's really a limitation on annexation, I believe. What about the alleys? There is, I can't, I know one case, and if you want me to find it, I can tell you. There's a case that talks about in zoning cases that an alley is two parcels between, on the other side of the alley are adjoining. But I don't have any annexation cases. And that's not a case talking about contiguous. That's talking about adjoining in a zoning sense. And so that's the only one that's out there that I know of. As I'm thinking of all these examples. Dr. Stein? Any other questions? No. Okay. Thank you for, if you'd like to just wrap up. We have an argument in retroactivity, but it's in our brief. And the question there is whether, as we discussed, whether, so the remedy, we call it a remedy, whether she receives her money at the end of the lease term or every year, as we discussed. And we think that because the amount of money at issue is so de minimis, that it's not, it's more of a remedy than a substantive right. Thank you. Thank you. Mr. Morales, do you have a reply? Thank you. I'll be very brief and just address a couple of the points the council raised. One of the points that was raised just first off is how small the damages are for plaintiff, at least with respect to the security deposit interest. That's true. That's undeniable. It's slightly over $2 that she was denied over the course of the leasehold. But that is exactly the purpose of the class action device. This case could never be brought ever. And an organization could do this to hundreds, thousands, millions of people and profit from it. And it truly isn't that big of an issue for this individual plaintiff, but it would eviscerate the entire class action device to say, well, this isn't that big of a deal, so let us keep doing it. As far as, there was a number of facts touched on again that I think only underscore the fact that we need a trial court to take a look more closely at this. We need cross-examination of witnesses. We need cross-examination of people who can validate documents that have been presented. Counsel referenced in her presentation that this is an urban area. Well, it very well may be. I don't know. I haven't been out there. But that is yet another factor that may affect the outcome with respect to continuity and with respect to the duties that they had under the Act. Mr. Justice, you raised the issue of alleys and how that may differ from a tollway or a football field with a highway. It may. It may matter whether there's some 12-inch piece of concrete running through two homes in this subdivision and whether or not that constitutes a lack of continuity or not. One of the points counsel made was that we don't dispute the nature of the subdivision. That's not true. We do. We presented an alternative map, one that shows the entire lot. While we argue that the units to the east of Bogdan Lane are contiguous with those to the west where Plaintiff's unit was located, if you look at the map we presented, to the south of Bogdan Lane and to the north of what I believe is called Collingwood Drive, there are a number of units as well that information has showed us are either owned or managed by some of the relevant parties. So I think that goes further to the fact that there are factual disputes at issue here that the trial court is going to have to allow us to delve into before we can make a definitive determination of the case law. The final point that counsel raised is the retroactivity issue, and I touched on that briefly, and so I'll be brief again. The amendment at issue here is not a remedy. A remedy is what is at issue in the case cited by counsel, by LaValle, which in that case, and the name I'm throwing in the blank, but I will tell you shortly, Dardeen v. Hartland Manor, which was an Illinois Supreme Court case in 1999. The amendment in that case was ridding a statute of a treble damages award. The damages here, the remedy here for a violation of the statute, is the same today as it was a year ago. You can sue for the security deposit, for interest, for attorney's costs and fees, just like you could one year ago. The only thing that's different is now you don't have to be paid your security deposit interest after each 12-month period. You may have to wait until the end of your tenancy to get it, and that kind of change is not one to a remedy and is not substantive, and unless the panel has any further questions, I'm finished. I'm wondering on the contiguity question, isn't that really a question of law? I mean, you know, we or the trial judge has to make a decision about whether the contiguity can jump across the street or land or whatever it is. Yes, Your Honor, with one caveat, I agree. It absolutely will be a question of law when we have a complete factual record as to how this subdivision is actually laid out. What is the width of Bogdan? What are the units behind to the south of Bogdan and to the north of Collingwood that certainly adjoin, and that there's no dispute adjoin, some of the units on the exterior of Bogdan? I know this is difficult to talk about without reference to the map, but we don't know who owns what units, who manages which units, we're disputing that, and where exactly these units are located, and what are the obstructions and or intervening portions of the road involved in this particular subdivision. We do know, and it's not disputed, that there's 85 or so units in that area in what is called Parkview Estates, in what is advertised as a unitary apartment complex online. So I agree, once we determine Bogdan Avenue is 150 feet wide, and properties are set back here, and this is the kind of traffic that goes through, potentially then it will be a question of law once there are no disputed issues. In fact, we don't know whether we're dealing with the kind of road that was at issue in Rutland, or the kind of road that was at issue at Belmont. And that's the answer to the question. Thank you very much. Thanks very much. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And with that, we will stand. And recess until tomorrow morning at 9 o'clock. Please rise.